Court now calls 1-1-7-1-5-5 Johnny Cordray versus the Illinois Prisoner Review Board at all. You ready to proceed? You may proceed. Good morning your honors, counsel. May it please the court, King One of the basic principles of due process is this. We do not imprison people for poverty. In this case, after 21 years in prison, Johnny Cordray was set to be released from the maximum security prison in Menard. At that time, under Illinois law, he was to begin serving a three-year process of mandatory supervised release, MSR, also known as parole. Now parole comes with certain conditions. In this case, for Mr. Cordray, like other sex offenders, that meant suitable housing where he could be electronically monitored and also receive therapy for anger management and as a sex offender. These three years were to be a crucial bridge of rehabilitation and transition from life in prison to life outside of prison. And this bridge of rehabilitation and transition is not only important to the inmate, it's important to society. It is the means by which we encourage and support a prisoner to reenter society as a law-abiding citizen. Now in this case, the state did not have adequate or sufficient housing for Mr. Cordray as it does not for most sex offenders. And because Mr. Cordray was indigent and did not have the funds for housing of his own, before he ever set foot out of prison, he was deemed to have violated his parole and sent back to the same maximum security prison, not because of anything that he did, but because he was too poor to have a place to live. I have two questions. First of all, do we really have enough facts here to know that Mr. Cordray was denied solely on his financial status? We do, Your Honor. No one contests and the state concedes that he was indigent. And second of all, would it make any difference if the defendant had assets but wasn't able to find a place to live and was and was reincarcerated? Would this not apply then to him? That's correct. If you had a prisoner who, for reasons outside of indigency, was unable to find a place, that would be a different issue. Our focus here really stems from Morrissey and Bearden, and that is that if conditions are placed upon parole that can only be satisfied based upon what you have in your bank account and cannot be satisfied based upon what you have in your bank account, then that's a violation of due process. Mr. Cordray, you mentioned that the prisoner was, the reason why he wasn't released was because he was a sex offender. Is it only because he was a sex offender and indigent, or do they treat other prisoners for other crimes the same way? Do they have housing for other offenders that are not sex offenders, and are they returned? Well, the general principle would apply to anyone who has a condition of housing placed upon their parole, but in answer to the question, Your Honor, the housing for sex offenders is far more limited than it is for those who are not. So in this case, the reason given for his violation, so to speak, was that he did not have suitable housing, and the reason he did not have suitable housing was that there's so limited housing for sex offenders where they can be monitored. You asked that this be a writ of mandamus. Is that an appropriate remedy, because isn't it a ministerial act, and there's discretion with this particular decision of where to send him? Well, in this case, what we were asking for is a writ of mandamus that declares that this violating-at-the-door procedure is unconstitutional. We're not suggesting for a moment that this court has to define the particulars of how to correct that procedure and make it constitutional. We're just in this classic, is the classic mandamus is to mandate the obedience to the law, and in this case it would be obey, have a procedure which is constitutional and does not deny due process to indigent prisoners. I'd like to pick up off of both Chief Justice Garmon and Justice Burke's questions. You're really asserting substantive due process, right? I believe your reply brief mentions substantive due process. That's correct, Justice Garmon. The first one doesn't. So we're looking at the rational basis test, right? That's correct. Okay, and you indicate that the issue here presents a question of law, right? Whether the practice of violating-at-the-door for indigent offenders denies those offenders the guarantees of due process and equal protection. That's basically your argument, right? That's correct. Okay, but now to Chief Justice Garmon, we have no information concerning how many indigent offenders are released on MSR or how many non-indigent offenders are violated at the door, do we? We don't have specific information, no, Your Honor, but we do know this, that this is a practice that has been going on for close to ten years and it has affected prisoners throughout the state of Illinois in the exact number, but we do know that it's a widespread practice. That's how the federal court in Chicago is able to certify a class in the Murdoch case. This is, the state doesn't deny that this is a long-standing and it's widespread and it affects hundreds of prisoners. I'm just concerned, how are we going to make a rational basis inquiry? We don't have any information concerning whether there's a legitimate legislative purpose for the practice of violating-at-the-door in front of us, do we? Yes, you do. You have this, is that there is no rational basis given here other than in Mr. Cordray's case and in countless other cases, the only basis for denying him parole is, quote, he does not have a suitable place to live. It's not whether he violated any other condition of his parole before he ever walks out of prison and the only reason given is lack of suitable housing and it's undisputed that he's indigent and that if... Yeah, that brings up my next problem. How can we, can this court grant defendants requests for relief to release him to serve as MSR at a suitable host location outside of prison if there is no suitable host location? Can we do that? Can do in the function of the... Yeah, yes, I think you can make that... Where is he going? Cordray's situation but in terms of the overall relief here and as we've mentioned, he's, his potential release date now or release date is mid-October, October 14. What the court's function is to declare the law and declare that this practice is unconstitutional and having done that, then it's really up to the experts in corrections, that is the Prison Review Board or the Department of Corrections to correct this unconstitutional practice and they will then need to do what they, they do as experts and figure out how do we make this, how do we make our parole system work in a way that does not violate the rights of indigents? Well that, you know, that gets back to whether it's proper mandamus, right? I mean, under what you're saying, typically we'd see a declaration from a lower court that it was unconstitutional and then we would be determining the constitutionality. Here we're being asked to mandate something. Correct, and this is a more unusual original jurisdiction case and, you know, the state has argued... I don't know how fair it is for us to take it and then ask you how can we grant it, but... I'm here. Yes, I'm here. But maybe I should do this, how can we take this? Well, and it's our privilege, it's my privilege, but the reason, and I guess I, to answer your question more fully is why, why does the court have original jurisdiction here? And the reason is the state has argued that, well, the circuit court could have taken this up and I agree the circuit court could have taken this up, but the mere fact that the circuit court could have doesn't mean that this court cannot, because original jurisdiction for this court is independent and separate from the jurisdiction of a circuit court. And when there's no dispute by the state that this practice has been ongoing and is widespread, and I don't know that anybody can really deny that it has affected hundreds of prisoners, hundreds of prisoners have lost parole for nothing more, for no more reason than they have been indigent and not had a place to parole to, then in that case those basic facts are not going to change if this was taken up in the circuit court. The only thing that would happen if this was taken up in a circuit court, it would mean years more litigation, the basic facts are not going to change that this is a widespread practice, that's not disputed by the state, and we're going to have hundreds more prisoners lose parole, lose this critical three years of rehabilitation and transition, that will all be lost to hundreds more as this would wind its way through a circuit court over the next who knows how many years. One of the concerns I think we all have is this court's supervisory authority on what is the nature of a mandamus. I think we all have this question. If we agree with you and we enter this order, where is he going to go? What happens to Mr. Coulter, this real human being? What's going to happen to him? We said he must be released. Where's he going to go? I might suggest that if this case were coming through the court system, that answer could be developed. But we are here today. Where would he go this afternoon if we entered this order now? He would, this would be remanded to prison review board and they would have to find suitable housing for him. And who would pay for that? The state of Illinois would have to pay for that. And it's no different than, it's no different from when we mandate that indigents have to have counsel or that certain other constitutional provisions have to be adhered to. This is, it's never been an excuse that lack of funds by the state is an invitation to violate the Constitution. And that goes back issues from prison overcrowding or whatever. I mean that's, that's the essence here. Is that the mere fact that this might cost more money, that's, that's not a reason to violate the Constitution. So, so to add on to the question from Justice Tice, so it's more than just a writ to order him released. It's a writ to order he be released and that the state provide him adequate housing, suitable housing. So it's two, it's a two-piece order that you really are requesting. Exactly, Chief Justice Carmen. We're not suggesting for a moment release sex offenders. That is, we've never suggested that. We're saying these, these prisoners have served their time and they should get the, the bridge of rehabilitation and transition in suitable housing rather than being put back in a maximum security prison as in Mr. Cordray's case. That's, that's the essence of what we're talking about. And to deny them that opportunity and to deny hundreds of that because they, they can't afford a place to parole to, that goes back to one of the most fundamental propositions. When we look at the Supreme Court's Morrissey, there in the Supreme Court's Morrissey decision, it establishes that parole differs from prison in important ways. It is a liberty interest. It's a liberty interest that's conditioned as in this case on suitable housing or other conditions. It's limited. But it's a liberty, liberty interest and it's a liberty interest that is protected by due process. And then the Supreme Court in conditions on parole that can be satisfied based upon what someone has in their bank account and that cannot be satisfied by someone who is indigent, that violates due process. And that's the essence of this case here. And there's no need for factual development about those basic facts. Those basic facts will, will not change if this goes back to the circuit court. We're not asking this court to do anything more than declare that this practice as applied to indigent prisoners is unconstitutional. And it's up to the state to figure out the particulars. They're the expert. The executive branch is the expert on how to implement this. We'd be doing more than saying to the state, you figure it out. We'd be saying, you find a house, you find housing for him and you pay for it. Now, I mean, maybe they pay for it, but is it, have we ever done anything like that? And is there any authority for us to do that? Yes, I would, I would suggest that the, the Adams decision by the Alabama Court of Appeals is a, is a good, is a good parallel to what we're requesting here. And in that case, the state of Alabama had a statute which says, said that homeless people could not have parole unless they had an address. So of course, the, the average homeless person lost parole because they do not have an address. And the, the Alabama Court of Appeals found that in analyzing the Morrissey and Bearden line of cases, that this was unconstitutional, a violation of equal protection. We're talking about due process, but I think the, the, the ideas converge. So they declared that to be unconstitutional. They did not tell the state of Alabama how to implement that, but they, they did what a court does in its judicial function, declare the law. And that's, that's the essence of what we're talking about here. But, but you are, I take it based on your argument and the idea that this parole period is to bridge the gap and to help individuals. You are not arguing that the law is not rational, requiring parole and requiring a home or requiring monitoring and all of that. You're asking for something else. You're saying the law is rational, but we have to order the state to pay it. Isn't that what you're doing? Exactly, Justice Carman. We're not saying for a moment that the law itself is unconstitutional, that they're on its face. We're saying as it has been applied, as it has been applied to indigents, it violates fundamental principles of due process as the Supreme Court has announced in Morrissey, Bearden, and the illustration in the Alabama Court of Appeals. That's what we're saying. We're not saying for a moment that the statute itself is unconstitutional, but it is as applied to indigent prisoners who cannot afford suitable housing. Was there an action filed in the circuit court in this particular case? No, Justice Thomas. This came up through a handwritten petition to this court. That's what I thought. The Attorney General then responded and made some of the same arguments about there being fact issues. The court then appointed me, and it proceeded then as original action. Is your request that if we disagree with your argument, that you dismiss it without prejudice to file an action in the circuit court? That we be allowed to do that? Yeah. That's not part of our request here. We believe that, as I said, going back to the circuit court... I'm just saying if we don't believe it. If we go the other way, should you have an opportunity to file something in the circuit court or not? Well, at that point, my client, Mr. Cordray, will have been released from Menard by October 14th. Does he now have a place to go? Well, he's indigent. He did not have a place that would satisfy the requirements. But now that's the thing. He will have none of the benefit. He will have served this crucial time of rehabilitation and transition. He will have never had the therapy. He will have never had any of the transitional treatment that's not only important to him but for society. He spent it all in Menard, and he's going to go out without any of that. Oh, he served his entire sentence at that point? By the time this... Yes. He was done. He had served his sentence. So since April 2013, he has simply been, in effect, this MSR has been in a maximum security cell. And it really defeats the entire purpose of this rehabilitation. And he gets no benefits of the counseling? Nothing like that happens during his period of MSR? Nothing. And that is why this is not only policy, it deprives him and society of this critical rehabilitation and bridge. But it's a violation of due process. We do not incarcerate people for poverty. Thank you, Counselor. Thank you. Good morning, Your Honors. May it please the court. Counsel. Brett Laitner with the Illinois Attorney General's Office on behalf of respondents. Your Honors, not one person, not one person has ever been refused MSR because they were characterization of the actual facts of the process that goes on generally and of this case. And it is far too vague to grant the kind of constitutional and mandamus relief that the Court seeks in this case. This Court should dismiss plaintiff's original action or otherwise deny relief for four principal reasons. First, original actions are not a Second, factual issues predominate here that require resolution. We do not have enough facts. We need discovery. We need to figure out many things to determine whether these claims are proper and to determine what relief, if any, should be given. Third, it failed to state a claim in any case under Illinois' fact-treating rules. And fourth, this matter is barred by res judicata in any event because this was litigated on behalf of a class that included corridoree to final judgment in federal district court. Turning to my first point, original actions may not be used to subvert the normal appellate and judicial process. A corridoree acknowledges, admits today that this case could have been filed in the circuit court. There's no reason to go jump straight to Pascal and come straight to this court. Wouldn't the federal case have res judicata issues? Yes. So he really couldn't have filed in circuit court? Well, he could have filed in circuit court and then we could have determined the res judicata issues. The same as, you know, the res judicata applies equally here. You know, it's still, original actions are not, you know, some exception to the res judicata bar. So he could have filed in circuit court and then they could have, or we could have argued the res judicata effect. And I'll skip to that point because that does raise an interesting issue. One of the defenses that corridoree raises to the application of res judicata, of the Murdoch case, is that there was inadequate representation on behalf of the class. That question, which may be raised certainly in a defense to a res judicata claim, when there's been a final judgment in a federal case that has been litigated as a class, that had been certified pursuant to federal rule of civil procedure 23b2, that is a fact issue that requires factual exploration. The adequacy of the representation of the class so as to preclude res judicata's preclusive effect is a fact issue. And that would be specifically within the province of the circuit court to determine. In addition to admitting today that this very case could have been brought in the circuit court in the first place, paragraph eight of their complaint lists numerous other cases that are similar that have been brought in the district court or the trial court, federal district court. There's no reason, there's no reason to come straight here without the benefit of factual development, the benefit of discovery, and the benefit of working out a remedial plan if that is what is necessary. Second, as your honors indicated, factual issues predominate. Original mandamus actions, before this court, are only to resolve issues of law. They are not to resolve issues of issues of fact. When there are factual issues, it is improper to come straight to this court with a mandamus action. An example of this is provided by the case cited by Corby, Holly v. Montez, which was an original mandamus action before this court that involved solely the legal question of the legal authority of the prisoner review board to impose electronic monitoring as a condition of mandatory supervised release for non-sex offenders. So that was simply a question of statutory construction. That type of pure legal issue may be something that could be the subject of an original mandamus action before this court. That is a far cry from the issues here. Here we have constitutional challenges apparently grounded in substantive due process and equal protection, which today have changed for the first time to become an argument that there's a constitutional entitlement for the state to pay for a host site when you're released on mandatory supervised release. That's certainly not alleged in the complaint, as would be acquired by our fact-cleaning rules. But putting that to the side for a second, both of the constitutional claims nonetheless require an analysis of the nature of Corby's rights, as well as the reasonableness of the state's conduct. There is a rational basis determination that needs to take place. In his reply brief at page 13, Corby claims that the only relevant facts are that people stay in prison because they are too poor to get a host site. You can be indigent and have a brother you can go stay with that would be an approved host site. And that probably happens. And that probably happens a lot. We don't know because we don't have any facts and we haven't been able to find those facts. But that probably happens. Additionally, there are people, there are sex offenders who are not indigent, who nonetheless do not have a suitable host site. Or there might be. Again, those are facts we don't know. But when you're trying to state a claim for equal protection that certain classes are being treated differently, we should have some kind of factual development as to what those classes actually are. What is the composition of those classes? Additionally, additionally, we don't know what steps Corby took to find a host site. There's no dispute or well, there wouldn't be any dispute if we had any factual development, but we don't. But there should be no dispute about the fact that when somebody is about to be released on parole, they need to come up with a parole plan that they show the Department of Corrections as to how they are going to comply with the requirements that the Prison Review Board has imposed on them for their mandatory supervisory leave. You stated earlier that no one has ever been denied MSR. Yeah. Is that a bracket? I'm sorry? Is that a bracket? That is not. We do not. I'm sorry. Yes, we do not have those facts. Can we disregard that statement? You can disregard that statement if you disregard every statement they make that people who are poor have been denied MSR. My statement is equally as valid as theirs. Well, Mr. Langer, let me follow up on that. When you started your argument, your very first statement was that it was, I forget, this is not a quote that you said, a mischaracterization or it's not accurate. Yes. That anyone has ever been denied MSR because of their indigence. Only because of their indigence. Let's forget about the world of everybody. Mr. Cordray, his MSR, his parole was denied. Is that correct? He was not released on MSR. That is correct. Do we know of record why he was not released? He did not have a suitable host site to comply with the electronic monitoring. So it was a lack of housing. Suitable housing. Lack of approved housing. But we don't know what the basis for the determination is of why it was insufficient housing. Or do we? No. As of record, no. It simply says, what is of record simply says that he was denied because he did not have an approved host site to which DOC, the Department of Corrections, is legally obligated only to release him when he does have an approved host site. We don't know what the problem with any possible host site was. He did not have a host site, an approved host site, because he failed to get an approved host site. Not because he's poor. Because indigent people can still find host sites. Again, they may have relatives they can go stay with. That's fine. The Department has other, the Department has some contracts with agencies to which they can go. Whose obligation is it? Is it the defendant's or is there some obligation on the state? It is the defendant's obligation. But we know that the defendant has to come up with a plan to show how he will comply with the requirements of his MSR before he may be released. If, say, a defendant has no relatives or no suitable relatives, how does he go about getting housing that DOC provides? The answer to your question is not of record because we have no factual development. I can speculate on to that, but those facts are not in the record. I also wanted to know, does it, I mean, these periods of MSR are not all that long. I know they're probably, they're very long to the people that serve them, but not three years goes by pretty quickly. Sure. Day for day credit. Pretty quickly in the legal system to be able to file a suit and have discovery and so forth. Should that have any play in this or should it be any kind of a consideration? In reality saying, you know, go file a civil lawsuit is really kind of unrealistic. You can do it, but by the time you get it through the court system, you'll probably be out anyway. I would say no, Your Honor. For instance, there's no exception to the parameters of this court's original jurisdiction for cases that require temporary restraining orders or other injunctive relief or other some sort of expedited proceedings. All of those types of remedies or possible mechanisms are available in the circuit court. Yes, three years. And in fact, because as you correctly point out, when somebody is serving their MSR in the prison facility, they get day for day good conduct credit. So it's a year and a half that they actually spend in there and then their MSR is done and they're released. Yes, it could be difficult to conceivably to litigate the case in a year and a half, but it's not impossible. It happens. We get expedited discovery and get expedited treatment of it. And again, the circuit court is particularly well suited to govern those types of expedited discovery or expedited proceedings. Thank you. Your opposing counsel, Mr. Poore, suggested that when an indigent is not allowed out because of suitable housing and serves his time MSR in prison, is that the only thing that they lack? Do they not get services? Do they not get help how to make a plan when they do exit the prison? Those facts are not in the record. But when somebody is serving their MSR in prison, if the question is, do they get the mandatory sex offender services, rehabilitative services? No, they don't. Why not? The department does not. Well, I would say I believe no, they don't, though, again, without the factual. But the MSR is designed to help the prisoner reenter the community. And those services are valuable. So what your opposing counsel is saying is that if they're in prison and they're not getting any services, then society and the rehabilitation part of the prisoner doesn't get the benefit of those services that they should have had while in prison. That is true. And as a matter of due process and equal protection, that's irrelevant. That's a very good question that should be addressed to the legislature. But that simply does not impact the constitutional inquiry. But is that part of the discretionary decision of the review board? Because this is a writ of mandamus. And a writ of mandamus can only lie when it's a non-discretionary order. Some of it is. In terms of what conditions are imposed for mandatory supervisory release for the prisoner review board, some things are discretionary and some things are mandated by the General Assembly. The General Assembly says that certain classes of offenders must have these conditions as a requirement of the MSR. But the prisoner review board is free to impose other conditions, including, for instance, for some sex offenders, electronic home monitoring. For some sex offenders, it is required as a condition of MSR, the home monitoring and the host site. So, yes, you are right that there is absolutely an element of discretion involved in determining what are the requirements for MSR. And in this particular case, it was a matter of discretion of the prisoner review board to impose the electronic monitoring requirement, again, making it not suitable for mandamus relief. Other facts that we do not know that are necessary to determine the constitutional issues in this case include how many indigent sex offenders are released on MSR, how many of them find host sites, how many non-indigent sex offenders are not released on MSR because they can't find host sites. What steps did the sex offenders take to find host sites? What are the limitations on host sites? The General Assembly certainly puts limitations, especially on sex offenders, as to certain types of housing that they may have. What is the practical effect on the limitation of the availability of certain types of host sites? What steps did the defendants take in trying to find host sites? It is of record that the department's that a division of the department did attempt to place Cordray. They did. The department helped. The department tried to help. They tried to find him a placement. The exact extent of those efforts, again, is not fully developed in this record. But in determining whether there's a rational basis, in determining whether the government's conduct was rational, to defend against a constitutional claim, we would need to know those facts. Murdoch, the federal case of Murdoch, is a very good case in point. That case was determined on cross motions for summary judgment after extensive discovery. In fact, the amici in this case quote the factual development and rely on the factual development in Murdoch a lot. That is a definite case in point that factual development of these specific issues is important to the resolution. Cordray argues, or counsel argues today, that state versus Adams, the Alabama criminal appellate court case, should provide a template for this court. It's worth noting that that case started in the trial court and was up on summary judgment after factual development of what the circumstances were. That is how the court was able to make a constitutional claim and to come up with a remedy, a remedial scheme, factual development. Additionally, and this goes to the federal state of claim, Cordray admits that the Illinois scheme that requires or that permits the prisoner review board to impose electronic monitoring is rational. There's no challenge that this is a proper condition of his MSR. Without any type of statutory challenge, he's unable to obtain any mandamus because this court, to get him any relief, would be ordering the defendants to violate the law. There is a reasonable, an admittedly reasonable requirement that he have electronic monitoring at an approved host site. The Department of Prisons cannot, is not allowed to release him to a place that's not an approved host site. They're not allowed to just open the door and say go. We'll try to find you later. The law does not allow that. And those laws are not challenged in this case. Finally, in any event, this becomes an academic exercise because this case is barred by res judicata by the Murdoch matter. These claims were litigated on behalf of a class that included Cordray, and because the class is certified under Federal Rules of Procedure 23B2, he could not opt out of this class. These claims were litigated on a class that included Cordray against defendants that included department defendants and originally prison review board defendants to final judgment in the federal court. Cordray certainly argues that there is inadequate class representation, which is a fact question, but he bases it on a Fifth Circuit case, and he bases his decision solely on the fact that there was a decision made by class counsel there not to appeal the district court's judgment. But the 11th Circuit in 2012, in a case called Juris v. Inamed Corp. at 685 F. 3rd at 1327, specifically distinguished Gonzales and said the fact of a failure to appeal in the abstract does not create inadequacy of class representation. The mere failure to appeal an adverse decision is not in itself enough to show inadequacy of class representation. In Gonzales, there was actually a conflict. The named plaintiff in that case received retrospective relief. All the unnamed plaintiffs received only prospective relief. There was no appeal, and the courts have, reading Gonzales in the time subsequent since that decision was issued in 1973, have said underlying the finding of inadequacy there was the fact that there was an apparent conflict because the named plaintiff took the better deal for himself at the expense of all the other named plaintiffs. There's no such conflict issues here, similar to Gonzales. So Gonzales does not control this case for the purposes of the adequacy of class representation and the purpose of res judicata principles. For these reasons, because we need significant factual development, because this case could have and should have been litigated in the circuit court, because a res judicata bars this action, this court should deny mandamus relief. Thank you very much. Thank you, counsel. Mr. Poore. Mr. Poore, before you get started, there's some very good things you've talked about. I mean, the fact that going back to prison he wouldn't get the type of treatment he would get if he was out on MSR. The thing we're always faced with and the thing that I personally am grappling with and I think the court is, is every decision we make we have to make sure it doesn't do violence to our law in the area, right? And specifically here, mandamus. So I want to read you a quote from Madigan v. Snyder and then ask you a question. It said, mandamus is an extraordinary remedy traditionally used to compel a public official to perform a ministerial duty. Generally, the writ of mandamus will be awarded only if a plaintiff establishes a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ. There also must be no other adequate remedy. However, this court will consider a petition for writ of mandamus if it presents a novel issue that is of crucial importance to the administration of justice, even when all the normal requirements for the writ's award are not met initially. Okay? That's from that case. Even if this case, this is a question, even if this case presents a novel issue that is of crucial importance to the administration of justice, how can we decide the case on the record before us? You can, Justice Thomas, you can follow the established mandamus law in this case by declaring that the procedure of violating at the door is unconstitutional and that that is a mandate to the executive branch to follow the Constitution when applying parole revocation. Yeah, that's the remedy. How can we, what facts would allow us to do a rational basis test analysis to see whether or not there was a substantive due process violation in the record before us? The record before us is that this is a, in this case, since it is an original action by definition, it really doesn't have the traditional record. But the state has never, even now, they do not deny this is a affected hundreds of prisoners. And Mr. Legner's first remark here was no one's ever been denied parole because of indigency. Well, that would be news to hundreds of prisoners throughout the state of Illinois over the last ten years because why are they being denied? They're being denied because, quote, and this is almost a stock statement in these cases, they're being denied adequate housing. Well, why does an indigent person not have adequate housing? Because he's too poor. Now, Mr. Legner suggests, well, he should be able to, the burden should be on him to see if he had friends or relatives who could have provided housing. If he had friends or relatives, this would not be an issue. And besides, the concept of due process as it relates to indigents has never put that kind of a burden on an indigent. When we appoint counsel for indigents, we don't require the indigent to come up and say, do you have any friends or relatives who would lend you money so you could afford counsel? I mean, the same principle applies here. And that is that this is what we know in the record. This is a widespread practice. It affects hundreds. And it is done because there's a lack of suitable housing. And when a person does not have funds for that adequate housing, they're denied the bridge that is so crucial, not only for them, but for society. That in and of itself, that's the novel situation. And that's a sufficient basis here. And this notion that you have to go back to the circuit court to develop more facts, I've yet to hear anything from the state about what are these facts? You haven't denied that this is widespread. You haven't denied that this affects hundreds. You haven't denied that people are being denied because of lack of housing. You haven't denied that the vast majority who are denied are indigent. What more would a circuit court proceeding do other than prolong this for years? And what it means is that hundreds more are going to lose parole because they're indigent. That's what happens when this goes back to the circuit court. There isn't any legislative, legitimate legislative purpose to requiring that there be adequate housing? As we do our rational basis test analysis? Absolutely, Justice Thompson. There is absolutely, there is a rational basis like all of these cases. Like in Bearden, there's a rational basis. If you make a fine a condition of probation or parole and that some can afford it and some cannot, that's a violation of due process. So even though the concept of a fine or in this case adequate housing is rational, if it is denied to those who are too poor to meet that condition for parole and those who have money in the bank can satisfy it, that's a denial of due process. And that's what we're asking the court to declare here, that this practice as it is applied to indigents is unconstitutional. And then it's up to the executive branch to correct that in a way that avoids that unconstitutional denial of parole. And how they do it, when they do it, that's really up to the executive branch. And they're experts on how to do that. And that's not this court's function. This court's function is to declare the law. Can you address the res judicata problem, both in light of the, just generally the res judicata problem and specifically the argument here that concerns by the advocacy of representation, et cetera, are, again, maybe they're fact issues that need to be developed before we can make some decision about whether res judicata applies or not. This court can easily dispose of the res judicata question. There's three reasons it doesn't hold water. One, and Mr. Legner doesn't even mention this, the Illinois due process claim, we have brought this under both Illinois and federal, could not have been brought in the federal court of Chicago under the 11th Amendment. That's the Pennhurst case. That's basic law. You cannot bring a state claim in a federal court under the 11th Amendment. Period. And because of that, and that's not even, that was not even addressed in his remarks, that in and of itself dooms the res judicata issue here. Second, this notion that you have to develop additional facts, there's no additional facts that have to be developed here. The fact is, the counsel in Murdoch did not appeal that decision. Now, whether, whatever the reason was in the Gonzales case, that doesn't matter. It's that in a non-opt-out case like this, courts, this is a matter of due process. And there's special scrutiny when you tell an absent class member, you're going to be bound by some case you didn't even know about. You have to show that there's adequate representation. And so when there was no appeal, as the Gonzales case pointed out, that in and of itself is inadequate representation. And second, and this gets lost sight of, Murdoch was completely about procedural due process. It had nothing to do with substantive due process and the right of indigence. It has nothing to do with that. So the very claim that it was an issue in Murdoch was, is not present here. So there's no need for any fact development here as to res judicata. It's simply, they're simply different issues. There's no question, there's no question that they didn't appeal in Murdoch. And overall, when we have an Illinois due process claim, that could not have been brought in the federal court under the 11th Amendment. That's... The due process claim and equal protection claims necessarily merge. I think you'd probably agree with that in a certain sense, right? They do. And I think the Justice O'Connor brought that. She was the authoring judge in Bearden. And she brought all of these cases about imprisoning people for poverty in a nice synthesis. And she says something just like that, Justice Thomas. She says that the analysis of due process and equal protection converge in due process. And so... At the risk of being redundant on the whole fact inquiry that we'd have to make, we have no record in front of us. We have no information concerning how many indigent offenders are released on MSR. We have no record before us on how many non-indigent offenders are violated at the door. And we're going to be asked to make a determination that there's equal protection violations. Well, I would come back to this. I would put equal protection to the side. And I would go back to, if there's any constitutional violation, it's due process. And that's the essence of Bearden. That it is fundamentally contrary to due process to put conditions on parole that some can afford and those who are indigent cannot afford. That is the fundamental violation of due process here. So you don't really have to even... Equal protection is really sort of a secondary argument. And I think Bearden is the case that brings that all together. It says this is due process and we don't imprison people because of poverty. And that's really what's happening here. I see your time has expired, but I have one additional question. You know, typically we do not reach constitutional issues if there's any other way to decide a case. This seems an unusual case in that you are not asking us to hold that any statute or anything is unconstitutional other than how the Prison Review Board applies it. Is that correct? That's correct, Your Honor. This is not a facial challenge to the statute in any way. What we're seeking here is it's an as-applied challenge to this practice, which no one disputes is widespread. And we're saying that as it is applied to the indigent... But doesn't that necessitate facts being brought before? In fact, it happens in that this is what happened to this defendant who claims to be indigent. Well, there's no dispute that he is indigent. There's no dispute that he was... Before he walked out of prison, he was violated because he had no suitable housing. And there's no dispute that this is a practice that's gone on for ten years. We can look at countless cases where this has come up. So to answer your question, this is an as-applied challenge, the essence of which is due to the fact that it's an as-applied challenge. It's a very simple process. Thank you. Thank you, Your Honors. Case number 117155, Johnny Cordree, v. The Illinois Prison Review Board, et al. will be taken under advisement as agenda number ten. Mr. Poore, Mr. Lightner, we thank you for your arguments this morning. You're excused at this time.